### VANCE *v.* McBURNETT & PRICE.

1. Where one purchased promissory notes given for the purchase money of land and took a conveyance of the land itself, knowing at the time that the makers of the notes had surrendered the bond for titles to the maker thereof, and afterwards took possession of the land by his tenant, he when so doing having the title to the land in himself in consequence of the conveyance made to him when he purchased the notes, he should be treated, relatively to third persons, as having rescinded the contract of sale made by the original vendor, especially where no possession under that contract had ever existed. If, subsequently to such rescission and while having possession of the land by his tenant, he sells the notes to others for value, and makes a conveyance of the land itself so that these purchasers may convey title to the original purchasers of the land when the notes shall be paid off, concealing the fact of rescission and the facts from which the rescission results, namely the surrender of the bond for titles and the taking possession of the land, and also representing the makers of the notes to be solvent when in truth they were utterly insolvent, the concealment and the representation, taken together, will amount to a warranty of the notes, both as to title and solvency; and in an action setting forth the warranty and alleging its breach, he is liable in damages for the amount, whether paid in money or property, which he received for the notes, the notes themselves being worthless.
2. A recovery on the warranty is not hindered by the fact that title to the land was conveyed to the plaintiffs at the time they purchased the notes, the object of this conveyance being, not to invest them with title as owners, but as creditors of the makers of the notes, and as security merely. If these notes had been ex-

tinguished as debts against the makers by reason of the rescission of the original contract of sale and the resumption of possession by the defendant as successor in title to the vendor, there was no debt to be secured by the conveyance made by the latter to the plaintiffs, and all that would be necessary to adjust the equities between the parties would be for the plaintiffs to recover on the warranty and reinstate the defendant in his title to the land; all of which has been provided for in the verdict, the suit being one in which equitable relief could be and has been administered.

3. In a sale of property at an agreed price, the seller having received in payment other property at an agreed price and in addition thereto promissory notes on third persons also at an agreed price, in an action against him upon a warranty of the notes neither the market value of the property sold nor the market value of that received, exclusive of the notes, is relevant in measuring the damages, unless it appears that the prices fixed by the parties themselves in the course of the transaction were fixed, not with reference to cash as a standard, but with some special reference to the medium of payment, and consequently that these prices were different from what they would have been if uninfluenced by the element of barter. Where price is fixed by express contract of the parties, market value is generally immaterial.

4. Neither upon the merits, nor upon any of the numerous small points, including the newly discovered evidence, is there any cause for a new trial.

August 6, 1894.

Equitable petition. Before Judge JANES. Haralson superior court. July term, 1893.

COBB & REESE and W. F. BROWN, for plaintiff in error.
ADAMSON & JACKSON, contra.

SIMMONS, Justice.

Wiggins sold to Hannah and Holloway a lot of land for $700, taking their promissory notes for this amount, and made them a bond for titles. He sold the notes to Bishop, making Bishop a deed to the land; and Bishop sold the notes to Vance the plaintiff in error, and made him a deed to the land as security. Prior to the transfer of the notes and conveyance of the land to Vance, Hannah and Holloway agreed with Wiggins upon a cancellation of their trade for the land, and surrendered to Wiggins his bond for titles to them. They had never

taken possession of the land, and were then insolvent. Vance knew these facts when he took the notes and the deed, but he rented the land to one Gore, who went into possession, and subsequently transferred Gore's note for the rent and the notes which Hannah and Holloway had given Wiggins for the purchase money of the land, to McBurnett & Price in part payment for a storehouse and lot and stock of goods which he (Vance) had bought from them, and made them a deed to the land, at the same time, as appears from the evidence of the plaintiffs, representing to them, as an inducement, that Hannah and Holloway were solvent and that the land was worth the amount of the notes. When the first of these notes became due, McBurnett & Price sent an agent to Hannah and Holloway to collect it, and then for the first time ascertained that the latter had never taken possession of the land, but had cancelled the trade with Wiggins and surrendered his bond for titles. McBurnett & Price then applied to Vance for payment of this note, and he declined to pay; whereupon they filed their equitable petition, alleging these facts and others, and praying that Vance be required to account to them for the value of the notes.·

The jury found in favor of the plaintiffs, and the defendant made a motion for a new trial, which was overruled, and he excepted.

1. The verdict was right and the court did not err in refusing to set it aside. When Vance purchased the notes of Hannah and Holloway from Bishop and received the deed as security therefor, he knew that they had surrendered to Wiggins his bond for titles. Knowing this he took possession of the land and rented it to Gore. Having thus the title to the land and the possession thereof, he should, as to third persons, be treated as having himself rescinded the contract of sale made by Wiggins, the original vendor, especially as no possession

under that contract was ever had by Hannah and Hollo-
way. Vance knew of this rescission of the original
contract, and he ratified it by taking possession of the
land and placing his own tenant on it; he sold these
notes to McBurnett & Price and made a conveyance of
the land to them as security for the notes, in order that
they might make a conveyance to Hannah and Hollo-
way when the notes were paid; he concealed the fact
that Hannah and Holloway had surrendered to Wiggins
his bond; he represented Hannah and Holloway to be
solvent when they were in fact utterly insolvent.

Taking these facts all together, they amounted in law
to a warranty of the notes, both as to title and solvency;
and under the plaintiffs' declaration, which sets forth
the warranty and alleges its breach, he is liable in dam-
ages for the amount, whether paid in money or property,
which he received for the notes, the notes themselves
being worthless.

2. It was contended, however, by counsel for the plain-
tiff in error, that McBurnett & Price cannot recover upon
the breach of warranty as to the notes, because the land
was conveyed to them at the time they purchased the
notes, and they must look to the land for their indemni-
fication. The object of the conveyance of the land to
McBurnett & Price was not to invest them with title as
owners, but merely as creditors of Hannah and Hollo-
way, the makers of the notes. When Hannah and Hol-
loway surrendered their bond for titles and rescinded
the original contract of sale, and Vance took possession
of the land as successor of the original vendor, the
notes given by Hannah and Holloway were also re-
scinded and became worthless, and the debt which the
conveyance to McBurnett & Price was given to secure
was destroyed. All that would be necessary to adjust
the equities between the parties would be for the plain-
tiffs to recover on the warranty and reinstate the defend-

ant in his title to the land; all of which was provided for in the verdict, the suit being one in which equitable relief could be and has been administered.

3. At the trial Vance proposed to prove the value of the property turned over by him to McBurnett & Price in payment of the property which they had sold to him; also the value of the property they had turned over to him. We think the court properly excluded this evidence, upon objection by the plaintiffs. So far as the record discloses, each one of the parties put a cash value upon the property exchanged. The notes of Hannah and Holloway were taken as cash; and it does not appear that the prices fixed by the parties were fixed with special reference to the medium of payment, and consequently that these prices were different from what they would have been if uninfluenced by the element of barter. We therefore do not think the market value of the property was relevant in measuring the damages. The parties having fixed a cash valuation, not only for the machinery, storehouse and goods, but for the notes also, the measure of damages for a breach of the warranty of the notes was the price fixed in the negotiation.

4. Neither upon the merits nor upon any of the numerous small points; including the newly discovered evidence, is there any cause for a new trial.

*Judgment affirmed.*